UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WENDY L. GRANT,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN[1],<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV-12-0038-JLQ<br><br>MEMORANDUM OPINION;<br>ORDER RE: MOTIONS FOR<br>SUMMARY JUDGMENT |

   Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her application for Supplemental Security Income ("SSI"), after a hearing before an administrative law judge ("ALJ").  This case, filed on January 11, 2012, was reassigned to the undersigned on July 1, 2013

   Before the court are Cross-Motions for Summary Judgment. (ECF Nos. 16, 18). Plaintiff is represented by attorney Maureen J. Rosette. Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney David J. Burdett.  Jurisdiction to review the

---

   [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit. No further action is necessary to continue this action by reason of the last sentence of 42 U.S.C. § 405(g).

ORDER - 1

Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Commissioner's decision is affirmed.

# I. LEGAL STANDARDS

## A. Sequential Evaluation

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is, benefits are denied. If she is not, the decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt.

404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

      Step 4: Does the impairment prevent the claimant from performing work she has performed in the past?  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is able to perform her previous work, she is not disabled.  If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

      Step 5: Is the claimant able to perform other work in the national economy in view of her age, education and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

      The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.**    **Standard of Review**

      "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

## II. PROCEDURAL HISTORY

Plaintiff, a now fifty year old female, first filed applications for Disability Insurance Benefits ("DIB") and SSI benefits on August 12, 2003, alleging an onset date of July 1, 2002. These applications were denied initially and on reconsideration. Plaintiff was found not disabled on February 8, 2008 by Administrative Law Judge Paul Gaughen after two administrative hearings and consultative psychological and physical evaluations of Plaintiff. The Appeals Council affirmed the denial of benefits and Plaintiff appealed the Agency's decision to federal court. On October 28, 2009, Magistrate Judge James P. Hutton affirmed the ALJ's decision and denied Plaintiff's Motion for Summary Judgment. *Grant v. Astrue*, 2009 WL 3617754 (E.D.Wash. 2009)(EDWA Cause No. 08-CV-00398-JPH).

While her prior appeal was pending in federal court, Plaintiff applied for benefits anew. On January 12, 2009, Plaintiff filed a new application for Disability Insurance Benefits and Supplemental Social Security Income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–1383c. (Tr. 165-167). Plaintiff alleged disability with an onset date of June 1, 2002, due to the effects of

ORDER - 4

the following conditions and her medications for these conditions: "mood disorder NOS, anxiety disorder NOS (social and GAD), borderline personality disorder, carpel tunnel syndrome, neck, knees, arthritis, asthma, bipolar, ADHD, and depression." (Tr. 180). Plaintiff's applications were denied initially and upon reconsideration. (Tr. 105-106). Plaintiff requested an administrative hearing which took place on April 8, 2010 before ALJ R. J. Payne. (Tr. 66-104). At the hearing, the ALJ noted the previous denial of benefits and did not reopen or reconsider the merits of the prior decision. (Tr. 68). Plaintiff agreed to amend the onset date to January 12, 2009. (Tr. 68). On April 16, 2010, the ALJ issued his decision finding Plaintiff not disabled. (Tr. 20-32).

Plaintiff subsequently submitted additional evidence to the Appeals Council and requested review of the ALJ's decision. After considering the new evidence, the Appeals Council denied her request on November 29, 2011 (Tr. 1-6), making the ALJ's ruling the "final decision" of the Commissioner as the term is defined by 42 U.S.C. § 405(g). Plaintiff now seeks judicial review of that decision. (ECF No. 1).

### III. FACTUAL BACKGROUND

The facts are contained in the medical records, administrative transcript (ECF No. 5)("Tr."), and the ALJ's decision, and are only briefly summarized here.

Plaintiff was born in 1963 and was 46 years old at the time of the administrative hearing. She has an eleventh grade education and does not possess a G.E.D. She took college courses for three years in the field of human services. Plaintiff is married, but has been separated from her husband for over ten years and at the time of the hearing, lived with her boyfriend. Plaintiff has two sons, ages 22 and 17, though her youngest son was placed in foster care in June 2003. Plaintiff's only daughter died at age 3 in 2000. Plaintiff worked as a waitress, a photographer and as a caterer helper setting up, running, and tearing down banquets. (Tr. 197). She testified that in 2002 she quit her last job at a caterer

ORDER - 5

helper due to neck pain. (Tr. 84). Plaintiff testified her driver's license was suspended in 2001 because of a DUI (she later quit drinking in 2006), and although she legally could and would like to get her license back, she testified she cannot afford to do so. (Tr. 84).

Plaintiff testified she has had chronic knee pain since being in a motor vehicle accident in 1989. In 2004, she had surgery on her neck. For years, Plaintiff has taken medication for pain (morphine, hydrocodone, Gabapentin for nerves, muscle relaxants), depression/anxiety, ashthma, migraines, sleep, and allergies. There are no records of mental health treatment other then prescription medications.

**1.    Commissioner's 2008 Findings**

As background, the court notes that the thorough 2008 decision of ALJ Gaughen denying Plaintiffs' previous applications for benefits is part of the administrative record submitted herein. (Tr. 110-148). ALJ Gaughen determined that Plaintiff had the following severe impairments: degenerative arthritis of the cervical spine status post anterior cervical discectomy at the C3-C4 level with interbody fusion, degenerative arthritis of the right acromioclavicular joint status post arthroscopy of the right shoulder with open rotator cuff repair and excision of the right distal clavicle, and history of alcohol and/or marijuana abuse. The following impairments were deemed non-severe: ADHD, ADD, bipolar disorder, PTSD, depression, anxiety, panic attacks, carpal tunnel, migraine headaches, asthma, healed fracture of the right distal fibula, and bunion/ bunionectomy. ALJ Gaughen found the claimant's statements regarding her impairments and their effect on her ability to work not entirely credible "in view of the significant discrepancies among the claimant's statements over time and the substantial discrepancies between the claimant's statements and the documented signs, findings and treatment of record." (Tr. 137). The ALJ then noted an example: "[A]lthough the claimant alleges chronic, sever disabling pain and has consistently

been prescribed powerful narcotic analgesics (typically by physician's assistant Mr. Cantu, but sometimes by more than one simultaneously – apparently without such sources being aware of the other prescribers), the record clearly documents quite extended periods during which the claimant consistently demonstrated benign findings, benign signs, and no pain behavior on repeated examinations." (Tr. 137). ALJ Gaughen rejected Mr. Cantu's 2003 opinion that Plaintiff was limited to sedentary work, concluded Plaintiff was not disabled, and was capable of performing light to medium work, including her past relevant work as a waitress, caterer, and photographer. (Tr. 147). These findings were upheld on appeal.

**2.    Commissioner's 2010 Findings**

Currently before the court on appeal is ALJ Payne's April 16, 2010 decision finding Plaintiff not disabled since January 2009. The ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful activity since January 12, 2009, the date Plaintiff had dated her SSI application. At Step 2, the ALJ determined that Plaintiff has the following severe impairments: mood disorder, not otherwise specified; anxiety disorder, not otherwise specified; maladaptive personality trains; alcohol dependence in full remission; cannabis dependence, in full remission; status post fusion at C3-4; and chronic knee pain.

The ALJ called Raphael Kuka, PhD, and Arthur Lorber, M.D. to testify at the hearing as medical experts. (Tr. 69-77). At Step 3, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, but with moderate non-exertional limitations in the following areas: in her ability to carry out detailed instructions; work in coordination with or proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; get along

ORDER - 7

with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 23-34). Based upon this determination of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform her past relevant work as a waitress and caterer helper. (Tr. 31).

At Step 5, the ALJ relied upon the Medical-Vocational Guidelines to conclude that there are jobs that exist in significant numbers in the national economy that the claimant can perform. The ALJ did not rely upon the testimony of a vocational expert as the ALJ concluded that "the types of exertional and non-exertional limitations which are present in this case at hand would not significantly erode the job base at the sedentary and light job levels." (Tr. 32).

Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from March 25, 2008 through the date of the decision, April 16, 2010.

After the hearing, Plaintiff requested review by the Appeals Council and submitted additional post-hearing medical evidence and a report of an independently hired vocational expert, Ellen Nagourney, who opined the Plaintiff was then unemployable due to the present economy and the presence of non-exertional limitations. The Appeals Council considered the additional evidence and found that it did not provide a basis for altering the ALJ's decision. (Tr. 2).

Where, as here, the Appeals council does consider the additional evidence, but denies review, the additional evidence becomes part of the administrative record for purposes of this court's analysis. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–63 (9th Cir. 2012).

**III. ISSUES**

The issue before the court in this action for judicial review is whether the ALJ's decision is based on substantial evidence and is free of legal error. Plaintiff argues that the court should vacate the Administrative Law Decision because: (1)

ORDER - 8

the ALJ erred in rejecting the opinions of Plaintiff's treating and examining sources; and (2) the ALJ improperly relied on the Medical-Vocational Guidelines (appearing at 20 C.F.R. Part 404, Subpart P, Appendix 2 and commonly known as "the Grids") when considering jobs that exist in the national economy and failed to consider non-exertional limitations. The court will address each of Plaintiff's arguments in turn.

# IV. DISCUSSION

### A.   Medical Opinion Evidence

### 1.   Rogelio Cantu, PA-C

Plaintiff's argues that she is "more limited from a physical standpoint" than determined by the ALJ, and specifically, that the ALJ improperly rejected the opinion of Rogelio Cantu, PA-C, that Plaintiff was limited to sedentary work. Mr. Cantu is a physician's assistant who treated Plaintiff at the Community Health Association Spokane. Mr. Cantu served as Plaintiff's primary health care provider on an ongoing basis.

Physician's assistants are "not acceptable" medical sources under the social security regulations; they are treated as "other sources" and are "not entitled to the same deference" as acceptable medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.2012). Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 404.1502. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 404.1502. Medical sources classified as "not acceptable" include, but are not limited to, physician's assistants, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06–03p, at *2. "Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."SSR 06–03p, at * 3.

ORDER - 9

Factors the ALJ should consider when determining the weight to give an opinion from these "important" sources include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06–03p, at *4. The ALJ may discount testimony from "other sources" if the ALJ " 'gives reasons germane to each witness for doing so.' " *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir.2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)).

Though Plaintiff's Motion for Summary Judgment only mentions Plaintiff was treated by Mr. Cantu "from at least 2008," the court notes that the record evidences Plaintiff had ongoing visits with Mr. Cantu since 2003, primarily for pain medication re-fills. On July 1, 2008, Mr. Cantu filled out a Washington state Department of Social and Health Services physical evaluation form, indicating that Plaintiff's chief complaint was "neck and bilateral knee pain" and concluding that her overall work level was "sedentary" apparently due to a "subjective pain component." (Tr. 310). The ALJ accorded this opinion little weight because it was not supported by the treatment records. This decision was based in part on the same conclusion reached by the nonexamining medical advisor, Dr. Lorber.

The ALJ did not solely rely upon the opinion of Dr. Lorber, but also noted that Mr. Cantu's opinion was at odds with his own progress note from the very same date, which indicate that Plaintiff ambulated without a limp and had no instability or swelling, preserved and symmetric reflexes, no sensory loss, and no motor weakness. (Tr. 313).

Plaintiff claims that Mr. Cantu's opinion is buttressed by the evaluations of neurosurgeon Cynthia Hahn (who performed Plaintiff's neck surgery) and Larry Lamb, M.D. (Tr. 230), which Mr. Cantu had in his possession at the time.

ORDER - 10

However, Mr. Cantu's July 1, 2008 progress note indicates that these providers had no further surgical recommendations and that Dr. Lamb's "only other recommendations included massage therapy, acupuncture." (Tr. 312). Plaintiff's own independent vocational expert hired by Plaintiff, who also reviewed the medical record, opined in her letter submitted to the Appeals Council that "physical factors" do not significantly affect Plaintiff's ability to work. (Tr. 333). The ALJ provided germane reasons, supported by the record, for giving little weight to Mr. Cantu's 2008 opinion regarding Plaintiff's degree of limitation.

**2.    Frank Rosekrans, Ph.D**.

On January 7, 2009, Jessica M. Garry, a licensed mental health counselor, performed a psychological evaluation of Plaintiff after referral by the Department of Social and Health Services. (Tr. 231-241) Ms. Garry's conclusions were later adopted by Dr. Rosekrans as his own. (Tr. 241). Dr. Rosekrans opined that Plaintiff would have moderate limitations in her ability to exercise judgment and make decisions and moderate limitations in all five areas of social functioning (Tr. 233). These areas include: the ability to relate appropriately to co-workers and supervisors; ability to interact appropriately in public contacts; ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting; ability to care for self, including personal hygiene and appearance; ability to control physical or motor movements and maintain appropriate behavior.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830–31. Plaintiff contends the ALJ should have credited the opinions of Dr. Rosekrans and that the ALJ failed to set forth specific and legitimate reasons supported by substantial evidence for rejecting the functional limitations assessed.

ORDER - 11

The Commissioner asserts the ALJ's reasons are specific and legitimate.

After summarizing the opinion of Dr. Rosekrans, the ALJ stated:

> This opinion is not consistent with the claimant's statements on her function report related to her social functioning. Furthermore, in treatment notes, the claimant is repeatedly noted to have good judgment. This opinion is not consistent with the claimant's treatment records as a whole in which there is very little symptomatology revealed related to the claimant's mental health impairments.

(Tr. 31). The ALJ also relied upon psychological consultant, Raphael Kuka, M.D., who opined that Plaintiff had fewer moderate limitations in social functioning. (Tr. 31).

The ALJ's reasons for not adopting all of the functional limitations assessed by Dr. Rosekrans are specific and legitimate and supported by the record as a whole. Plaintiff reported that she does not have a problem getting along with authority figures, family, friends, and neighbors, and that she had never been fired or laid off from a job because of problems getting along with other people. (Tr. 193-194). It is also noted throughout the medical record that Plaintiff's appearance (ex. "well groomed" (Tr. 247)) and judgment (ex. "exhibits good judgment" (Tr. 245) were appropriate and her affect pleasant. The ALJ's and Dr. Kuka's remarks regarding the treatment record as a whole are correct: Plaintiff's regular treatment notes do not reflect clinical signs or symptoms associated with the stated degree of mental health impairment. In evaluating the severity of Plaintiff's mental impairments it is appropriate to consider the fact that the medical record contains no record of Plaintiff seeking or receiving mental health therapy or treatment, except for medication prescribed by her treating physician's assistant, Mr. Cantu.

The ALJ did not fail to provide specific and legitimate reasons for rejecting certain opinions of Dr. Rosekrans.

**B.    Application of the Medical-Vocational Guidelines (Grids)**

Finally, Plaintiff challenges the ALJ's use of the Grids without calling a vocational expert given Plaintiff's non-exertional limitations. Relying upon

ORDER - 12

*Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988), Plaintiff contends the ALJ was required to use a vocational expert because he determined Plaintiff could not resume her past relevant work and has non-exertional restrictions of work-related functional capacities.

At step five of the disability evaluation process, the burden shifted to the Commissioner to show that Plaintiff could engage in gainful employment in the national economy. *Reddick v. Charter*, 157 F.3d 715, 721 (9th Cir. 1998). The Commissioner can make such a showing in one of two ways. First, a vocational expert can be called to evaluate a factual scenario and testify about "what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir.1988) (internal citation omitted). Second, the Medical-Vocational Guidelines, or Grids, can be used to determine if a particular claimant is capable of performing certain kinds of work in significant numbers in the national economy. *Id.*

The Grids can be used in place of testimony from a vocational expert only in situations in which "the grids accurately and completely describe the claimant's abilities and limitations." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988) (internal citation omitted). Plaintiff's argument does not recognize that the existence of a non-exertional impairment does not automatically preclude application of the Grids. The "ALJ is required to seek the assistance of a vocational expert when the non-exertional limitations are at *a sufficient level of severity such as to make the grids inapplicable to the particular case*." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007)(affirming the ALJ and holding that the claimant's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert). The evaluation of whether a non-exertional limitation significantly limits the range of work the claimant is able

ORDER - 13

to perform is left to the ALJ.  A determination at step two that a non-exertional limitation is severe does not necessarily require the ALJ to utilize a vocational expert at step five.  *Hoopai*, 499 F.3d at 1076.

The ALJ found that Plaintiff's non-exertional limitations "would have little or no effect on the occupational base of unskilled light work." (Tr. 32). The ALJ determined that Plaintiff's non-exertional limitations were not severe enough to significantly limit the job opportunities available to Plaintiff.  The determination, if proper, allows the ALJ to rely solely on the Grids without the testimony of a vocational expert.  The question then before the court is whether this conclusion is supported by substantial evidence or based on legal error.

The ALJ's specific finding that her non-exertional limitations would have little effect on the occupational base is not challenged or addressed by Plaintiff in her Motion or Reply.  The evidence in the record supports the ALJ's conclusion.  As discussed above, the ALJ properly relied upon Dr. Kuka and the evidence does not suggest that Plaintiff's mental impairments significantly erode her ability to perform unskilled work.  Plaintiff's assessed limitations primarily concern the ability to carry out detailed instructions and work with others.  However, unskilled jobs ordinarily involve dealing primarily with objects, not people.  The court has already reviewed and upheld the ALJ's evaluation of the record to determine Plaintiff's RFC.  The court also concludes the ALJ's finding that Plaintiff's non-exertional limitations were not significantly severe enough to impact Plaintiff's range of acceptable work options as represented by the Grids is supported by substantial evidence.  Accordingly, the ALJ was not obliged to call a vocational expert.

V.   **CONCLUSION**

   **IT IS SO ORDERED:**

   1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

   2. The Commissioner's Cross-motion for Summary Judgment (ECF No. 18)

ORDER - 14

Case 2:12-cv-00038-JLQ    Document 21    Filed 08/06/13

is **GRANTED**.

The Clerk of Court is directed to file this Order, enter judgment for Defendant, provide copies to counsel, and **CLOSE THE FILE**.

Dated this 6th day of August, 2013.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15